# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

ABDULLA v PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY

Docket Nos. 167532 and 167533. Argued on application for leave to appeal April 8, 2026. Decided July 7, 2026.

Mohammed Abdulla brought an action in the Wayne Circuit Court against Progressive Southeastern Insurance Company, Auto Club Group Insurance Company, and Great American Insurance Company, seeking personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, for injuries he suffered when the tractor-trailer he was operating collided with another tractor-trailer in Missouri. The tractor was registered in Michigan, and the title was issued to Tornado Trucking, LLC, a limited-liability company solely owned by plaintiff. The title for the trailer was issued to Land Trucking, LLC. Under a lease agreement, Land Trucking leased Tornado Trucking's tractor and Tornado Trucking transported cargo for Land Trucking. Tornado Trucking held a Michigan "bobtail" insurance policy with Great American Insurance Company that provided certain coverage for the tractor but excluded coverage for PIP benefits if the vehicle was being used in the business of a lessee or to transport cargo. Land Trucking had an insurance policy with Progressive Southeastern Insurance Company that provided certain coverage for their company-owned motor vehicles and trailers, but it did not provide PIP coverage. At the time of the accident, plaintiff lived with his parents in Michigan, and his father had a no-fault insurance policy through Auto Club Group Insurance Company, but that policy did not list plaintiff as a named insured and did not list the tractor as a covered vehicle. After the accident, plaintiff sued Progressive Southeastern, Auto Club, and Great American, alleging that one of these insurers was first in priority to provide PIP benefits under the no-fault act. Plaintiff later amended his complaint to add the Michigan Automobile Insurance Placement Facility (MAIPF) as a defendant. Auto Club moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was an "owner" of the tractor, as defined in MCL 500.3101(3)(*l*)(*i*), and was therefore not entitled to PIP benefits from any insurer under MCL 500.3113(b) because he failed to maintain PIP coverage on the tractor as required under MCL 500.3101(1). The trial court, Dana M. Hathaway, J., denied Auto Club's motion for summary disposition and granted summary disposition in favor of Great American, the MAIPF, and Progressive Southeastern. Auto Club filed interlocutory applications for leave to appeal both orders. After granting both applications and consolidating the appeals, the Court of Appeals, REDFORD and D. H. SAWYER, JJ. (JANSEN, P.J., dissenting), affirmed, holding that, because the record lacked sufficient indicia of plaintiff's ownership of the tractor to conclude that he was either an owner or the registrant of the tractor for purposes of MCL 500.3101(3) and MCL 500.3113(b), the trial court correctly ruled that plaintiff's claim for PIP

benefits was not barred by MCL 500.3113(b) and that Auto Club was the highest priority insurer. ___ Mich App ___ (July 25, 2024) (Docket Nos. 364797 and 364866). Auto Club sought leave to appeal in the Supreme Court, which ordered and heard oral argument on the application. ___ Mich ___; 20 NW3d 564 (2025).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

Plaintiff was excluded from recovering PIP benefits under MCL 500.3113 because he was an owner of the vehicle and did not have the security required by MCL 500.3101(1) at the time of the accident. MCL 500.3101(3)(*l*)(*i*) defines "owner," in pertinent part, as a person "having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." In this case, plaintiff had the use of the tractor "under a lease or otherwise" for more than 30 days. Under *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530 (2004), when determining ownership of a vehicle for purposes of the no-fault act, the focus must be on the nature of the person's right to use the vehicle. As the sole member and agent of Tornado Trucking, plaintiff operated the tractor regularly and exclusively for at least six months before the accident, he was the sole decisionmaker as to its operation and upkeep, he did not need anyone's permission to use it, and he kept it in his custody. These facts demonstrated that plaintiff had the right to use the tractor in a manner that comported with ownership for a period of 30 days or more. This conclusion did not require piercing the corporate veil of Tornado Trucking but rather harmonizing the statutes governing limited-liability companies with the no-fault act, which contemplates that there may be more than one owner of a vehicle and whose definition of "owner" is controlling.

Court of Appeals judgment reversed; case remanded to the trial court for further proceedings.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 7, 2026

STATE OF MICHIGAN

SUPREME COURT

MOHAMMED ABDULLA,

       Plaintiff-Appellee,

and

PRECISE MRI OF MICHIGAN, LLC,

       Intervening Plaintiff-Appellee,

v                                    Nos. 167532-3

PROGRESSIVE SOUTHEASTERN
INSURANCE COMPANY, GREAT
AMERICAN INSURANCE COMPANY,
and MICHIGAN ASSIGNED CLAIMS
PLAN,

       Defendants,

and

AUTO CLUB GROUP INSURANCE
COMPANY,

       Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

        Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

ZAHRA, J.

Plaintiff, Mohammed Abdulla, is a commercial truck driver who was injured while operating a tractor-trailer that collided with another tractor-trailer in Missouri. At issue in this appeal is whether plaintiff was an "owner" of that tractor within the meaning of MCL 500.3101(3)(*l*)(*i*), which defines "owner" in pertinent part as "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." If so, plaintiff is not entitled to personal protection insurance (PIP) benefits under the no-fault act[1] because he did not maintain the required insurance on the tractor.[2]

The tractor was registered in Michigan, and the title was issued to Tornado Trucking, LLC, a limited-liability company solely owned by plaintiff. The title for the trailer was issued to Land Trucking, LLC. Under a lease agreement, Land Trucking leased Tornado Trucking's tractor and Tornado Trucking transported cargo for Land Trucking. Plaintiff was the only person who drove the tractor.

_____

[1] MCL 500.3101 *et seq.*

[2] See MCL 500.3101(1); MCL 500.3113(b).

We hold that, contrary to the conclusion of the Court of Appeals, plaintiff was an owner of the tractor under MCL 500.3101(3)(*l*)(*i*) because he "ha[d] the use of" the tractor "under a lease or otherwise" for more than 30 days. As the sole member and agent of Tornado Trucking, plaintiff operated the tractor regularly and exclusively for at least six months before the accident. "The focus must be on the nature of the person's right to use the vehicle,"[3] and the facts clearly demonstrate that plaintiff had the right to use the tractor in a manner that comported with ownership for a period of 30 days or more, thus coming within the definition of "owner" under MCL 500.3101(3)(*l*)(*i*).

In concluding to the contrary, the Court of Appeals majority erred by focusing on plaintiff's *actual* use of the tractor—his business use—instead of analyzing the scope of his *right to use* the tractor. Nothing in MCL 500.3101(3)(*l*)(*i*) requires an owner to have "individual" or "personal" use of a vehicle, nor does that provision include any other qualifying or limiting language on the phrase "having the use" thereof. The Court of Appeals also erred by relying on the fact that the tractor was titled and registered in the name of plaintiff's limited-liability company. While the Court of Appeals majority is correct that limited-liability companies are separate legal entities, the cited limited-liability statutes[4] cannot overcome the specific language defining "owner" in the no-fault act, which prioritizes function over form by employing the broader language of "[a] person . . . having the use of a motor vehicle, under a lease or otherwise," without qualification.[5] Our holding

___

[3] *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 530; 676 NW2d 616 (2004).

[4] See MCL 450.4210; MCL 450.4406.

[5] MCL 500.3101(3)(*l*)(*i*).

that plaintiff was an owner of the vehicle is not only consistent with the text of the statute, but it also furthers "the sound public policy imperative that users of motor vehicles maintain appropriate insurance for themselves as indicated by their actual patterns of usage[.]"[6]

In sum, we hold that plaintiff is excluded from recovering PIP benefits under MCL 500.3113 because he was an "owner" of the vehicle and did not have the security required by MCL 500.3101 at the time of the accident. Accordingly, we reverse in part the judgment of the Court of Appeals and remand this case to the trial court for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In December 2020, plaintiff was injured in a motor vehicle accident when the tractor-trailer he was operating collided with another tractor-trailer in Missouri. Plaintiff was hauling a truckload of tomatoes from Livonia, Michigan, to San Antonio, Texas. The tractor was registered in Michigan and titled to Tornado Trucking, a limited-liability company solely owned by plaintiff. The trailer that plaintiff was pulling was titled to Land Trucking.

Tornado Trucking and Land Trucking had entered into a lease agreement, under which Land Trucking leased Tornado Trucking's tractor and Tornado Trucking transported cargo for Land Trucking. Specifically, the agreement was titled "Independent Contractor Lease Agreement," and it identified Tornado Trucking as "Contractor" and Land Trucking as "Carrier." The agreement stated that the contractor was "solely responsible" for

---

[6] *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999).

payments on the tractor, that the contractor had the "right to make all crucial decisions with respect to the maintenance and operation of such equipment," that the contractor was free to work when and where it chose and could accept or reject work assignments on a "load by load basis," and that the contractor could set its own hours as long as they were consistent with federal regulations and any accepted workload. The agreement was silent as to whose responsibility it was to maintain insurance on the equipment used to transport Land Trucking's loads.[7] Plaintiff was the only person who drove the tractor. He stored the tractor at a Dearborn truck stop when he was not using it.

Considering the multiple parties at play, several insurance policies are relevant here. Tornado Trucking held a Michigan bobtail insurance policy[8] covering the tractor with Great American Insurance Company. Great American's policy identified Tornado Trucking as the named insured and the tractor as a covered vehicle. This policy provided nontrucking liability and physical damage coverage. The policy had a Michigan PIP endorsement, but it excluded coverage for PIP benefits when the bodily injury arose "out

---

[7] It appears that the parties were obligated to identify in the leasing agreement who was required to obtain insurance under 49 CFR 376.12(j)(1), which provides in part: "The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to [Federal Motor Carrier Safety Administration] regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance." The lease agreement between Tornado Trucking and Land Trucking did not comply with this requirement.

[8] A bobtail insurance policy typically provides coverage "only when the tractor is being used without a trailer or with an empty trailer, and is not being operated in the business of an authorized carrier." *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014) (quotation marks and citation omitted).

5

of the ownership, operation, maintenance, or use of a covered auto while being used in the business of any lessee or while being used to transport cargo of any type." The Great American policy therefore did not provide PIP coverage to plaintiff under the circumstances of this case because he was transporting cargo for a lessee.

Land Trucking, an Indiana company, had an insurance policy with Progressive Southeastern Insurance Company, providing liability and uninsured and underinsured motorist coverage for their company-owned motor vehicles and trailers. The Progressive Southeastern policy was issued in Indiana and did not list the tractor involved in the accident as a covered vehicle and therefore did not provide PIP coverage.

At the time of the accident, plaintiff lived with his parents in Lincoln Park, Michigan. Auto Club Group Insurance Company provided plaintiff's father with a no-fault insurance policy that provided PIP coverage. The policy did not list plaintiff as a named insured and did not list the tractor as a covered vehicle.

After the accident, plaintiff sued Progressive Southeastern, Auto Club, and Great American, alleging that one of these insurers was first in priority to provide PIP benefits under the no-fault act. Plaintiff subsequently amended his complaint to add the Michigan Automobile Insurance Placement Facility (MAIPF) as a defendant.

Auto Club moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff qualified as an "owner" of the tractor, as defined in MCL 500.3101(3)(*l*)(*i*), because he had use of the tractor for a period greater than 30 days before the accident. Therefore, under MCL 500.3101(1), he was required to maintain PIP coverage on the tractor. He failed to do so. Consequently, Auto Club argued, plaintiff was not entitled to PIP benefits from any insurer under MCL 500.3113(b).

6

The trial court denied Auto Club's motion for summary disposition, finding that plaintiff had maintained proper security on the tractor and therefore was not excluded from PIP coverage. The trial court further concluded that, pursuant to MCL 500.3114(4), Auto Club was the highest in priority to pay benefits. Plaintiff moved for partial summary disposition, which the trial court granted, ruling that any unpaid PIP benefits that were supported by reasonable proof and denied were overdue and that plaintiff was entitled to mandatory penalty interest and attorney fees for any claims for which Auto Club was liable. The trial court also granted summary disposition in favor of Great American, the MAIPF, and Progressive Southeastern, dismissing those parties from the case.[9]

Auto Club filed interlocutory applications for leave to appeal both trial court orders. The Court of Appeals granted both applications and consolidated the appeals. Thereafter, the Court of Appeals issued a split, published decision affirming the trial court's denial of Auto Club's motion for summary disposition, holding that the record lacked sufficient indicia of plaintiff's ownership of the tractor to conclude that he was either an owner or the registrant of the tractor for purposes of MCL 500.3101(3) and MCL 500.3113(b).[10] Accordingly, the Court of Appeals held that the trial court correctly ruled that plaintiff's claim for PIP benefits was not barred by MCL 500.3113(b) and that Auto Club was the highest priority insurer. Judge JANSEN dissented, opining that, at minimum, plaintiff was a co-owner of the tractor and therefore was required to maintain a no-fault policy under

---

[9] The dismissal of Progressive Southeastern was without prejudice in light of a potential appeal by Auto Club.

[10] *Abdulla v Progressive Southeastern Ins Co*, ___ Mich App ___; ___ NW3d ___ (July 25, 2024) (Docket Nos. 364797 and 364866).

7

MCL 500.3101(1). She would have held that because plaintiff failed to maintain this coverage as required, he was precluded from receiving PIP benefits under MCL 500.3113(b).

Auto Club sought leave to appeal in this Court. In lieu of granting leave to appeal, we ordered oral argument on the application, directing the parties to file supplemental briefs addressing "whether the plaintiff was an 'owner' of the motor vehicle at issue within the meaning of MCL 500.3101(3)(*l*)(*i*)" and "whether the plaintiff is entitled to personal protection insurance benefits as a relative of the named insured domiciled in the same household[.]"[11]

## II. STANDARD OF REVIEW AND PRINCIPLES OF STATUTORY INTERPRETATION

This Court reviews a grant of summary disposition de novo.[12] A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim.[13] In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion."[14] Such a motion "may only be granted when there is no genuine issue of material fact."[15]

---

[11] *Abdulla v Progressive Southeastern Ins Co*, ___ Mich ___; 20 NW3d 564 (2025).

[12] *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

[13] *Id*. at 160.

[14] *Id*.

[15] *Id*.

This Court also reviews de novo questions of statutory interpretation.[16] The role of this Court in interpreting statutory language is to "ascertain the legislative intent that may reasonably be inferred from the words in a statute."[17] "The focus of our analysis must be the statute's express language, which offers the most reliable evidence of the Legislature's intent."[18] When the statutory language is clear and unambiguous, judicial construction is limited to enforcement of the statute as written.[19]

## III. LEGAL BACKGROUND

The no-fault act requires an "owner or registrant of a motor vehicle" to "maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance."[20] "The requirements for a motor vehicle liability policy may be fulfilled by the policies of 1 or more insurance carriers which policies together meet such requirements."[21] The consequences for failing to maintain insurance as required by MCL 500.3101(1) are set forth in MCL 500.3113:

---

[16] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014).

[17] *Id*., quoting *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008) (quotation marks omitted).

[18] *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014).

[19] *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008).

[20] MCL 500.3101(1).

[21] MCL 257.520(j).

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

\*   \*   \*

(b) The person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by [MCL 500.3101] . . . was not in effect.

Accordingly, if an owner or registrant of a motor vehicle does not maintain the insurance coverage required by MCL 500.3101(1), that person is not entitled to be paid PIP benefits for accidental bodily injury arising out of an accident for which that security was not in effect. Here, we must determine whether plaintiff was an "owner" of the tractor involved in the pertinent accident. "Owner" is defined in MCL 500.3101(3) in relevant part as follows:

(*l*) "Owner" means any of the following:

(*i*) A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days.

\*   \*   \*

(*iii*) A person that holds the legal title to a motor vehicle or motorcycle, other than a person engaged in the business of leasing motor vehicles or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days.[22]

With its use of the term "any," MCL 500.3101(3)(*l*) makes clear that a person can establish ownership in different manners and that a vehicle can have more than one owner for no-

---

[22] Because the no-fault act sets forth a comprehensive definition of the term "owner," that definition controls over any competing ordinary or technical definitions of the term. See *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008) ("When a statute specifically defines a given term, that definition alone controls.").

fault purposes if different people satisfy the nonexclusive statutory definitions.[23] Under the facts of this case, plaintiff could be a statutory "owner" in one of two ways. The first is by "hold[ing] the legal title to a motor vehicle . . . ."[24] The second is via usage—that is, by "having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."[25] This subsection effectively establishes a form of constructive or de facto ownership even when the vehicle is titled in another's name. Here, it is undisputed that Tornado Trucking, not plaintiff, held title to the motor vehicle in question, thereby making Tornado Trucking an owner of the tractor under MCL 500.3101(3)(*l*)(*iii*). The dispositive question is therefore whether plaintiff had "the use of" the tractor, "under a lease or otherwise," for a period greater than 30 days, thus also making him an owner of the tractor under MCL 500.3101(3)(*l*)(*i*).

Our appellate courts have explored the boundaries of this subsection, ensuring that it captures control of, not mere use of, a vehicle. In *Ardt v Titan Ins Co*, the Court of Appeals, when defining "owner" under the previous version of this subsection, former

---

[23] While there can be more than one "owner" of a vehicle under the no-fault act, not every owner is required to purchase the security required by MCL 500.3101(1). *Iqbal v Bristol West Ins Group*, 278 Mich App 31, 42; 748 NW2d 574 (2008). The security mandate is satisfied if any person, even if not an owner, maintains insurance on the vehicle. *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 192-193; 934 NW2d 674 (2019). In this case, it is undisputed that nobody purchased the required insurance for the tractor. And "[w]here an uninsured motor vehicle involved in an accident has more than one owner, all the owners come under the statutory exclusion for personal protection insurance benefits." *Ardt*, 233 Mich App at 692.

[24] MCL 500.3101(3)(*l*)(*iii*).

[25] MCL 500.3101(3)(*l*)(*i*).

MCL 500.3101(2)(g)(*i*),[26] held that "having the use" of a motor vehicle "means using the vehicle in ways that comport with concepts of ownership."[27] This interpretation is compelled by the statute's context: " 'having the use of' appears in tandem with references to renting or leasing," both of which involve something beyond mere "spotty" or "incidental" usage of a vehicle.[28] Consequently, ownership "follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another."[29]

The rule set forth in *Ardt* was applied by the Court of Appeals two years later in *Chop v Zielinski*.[30] In *Chop*, the panel rejected the plaintiff's argument that she could not be an "owner" of a motor vehicle because the statutory definition applied only where there was a lease or rental agreement. The Court of Appeals explained:

> A plain reading of the statutory definition of the term "owner" indicates that anyone having use of a vehicle pursuant to a lease *or otherwise* for a period that is greater than thirty days is considered an owner of the vehicle. The phrase "or otherwise" plainly indicates that the Legislature intended this

---

[26] Former MCL 500.3101(2)(g)(*i*) is substantively identical to MCL 500.3101(3)(*l*)(*i*). See 1988 PA 126.

[27] *Ardt*, 233 Mich App at 690.

[28] *Id*. at 690-691. See *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 318; 645 NW2d 34 (2002) (explaining that under the doctrine of *noscitur a sociis*, a statutory phrase should "be viewed in light of the words surrounding it").

[29] *Ardt*, 233 Mich App at 691.

[30] *Chop v Zielinski*, 244 Mich App 677; 624 NW2d 539 (2001).

subsection to apply in situations other than those involving leases or rentals.[31]

Further, the panel explained that construing the act's definition of "owner" to apply in situations that do not involve a lease or rental agreement

> comports with the legislative purpose of the no-fault laws "to correct the injustice of allowing drivers who do not contribute to the no-fault system to recover damages from persons that do contribute to the system, and to provide an incentive for uninsured motorists to comply with the requirement that they maintain no-fault automobile insurance."[32]

In *Twichel v MIC Gen Ins Corp*, this Court emphasized control *rights* over actual use when determining ownership. It held that to be an "owner," "it is not necessary that a person *actually* have used the vehicle for a thirty-day period before a finding may be made that the person is the owner. Rather, the focus must be on the nature of the person's right to use the vehicle."[33] The Court opined:

> Nothing in the plain language of MCL 500.3101(2)(g)(i) requires (1) that a person has at any time *actually used* the vehicle, or (2) that the person has *commenced* using the vehicle at least thirty days before the accident occurred. The statute merely contemplates a situation in which the person *is renting or using* a vehicle for a period that is greater than thirty days.

> Accordingly, if the lease or other arrangement under which the person has use of the vehicle is such that the right of use will extend beyond thirty days, that person is the "owner" from the inception of the arrangement, regardless of whether a thirty-day period has expired.[34]

---

[31] *Id*. at 682 (citation omitted).

[32] *Id*., quoting *Stevenson v Reese*, 239 Mich App 513, 519; 609 NW2d 195 (2000).

[33] *Twichel*, 469 Mich at 530.

[34] *Id*. at 530-531.

Taking this caselaw collectively, when determining whether a person is an "owner" of a motor vehicle under MCL 500.3101(3)(*l*)(*i*), the focus must be on the nature of that person's right to use the vehicle and whether that use is possessory or proprietary in a manner that comports with ownership.

## IV. ANALYSIS

Applying the law set forth earlier, we hold that plaintiff is excluded from recovering PIP benefits under MCL 500.3113 because he was an "owner" of the vehicle and did not have the security required by MCL 500.3101(1) at the time of the accident.

There is no dispute that Land Trucking is the owner of the trailer involved in the pertinent accident. There is also no dispute that Tornado Trucking, not plaintiff, holds legal title to the involved tractor. But the statutory definition of "owner" includes more than the mere titleholder, and more than those having possession of a vehicle under a lease. The Legislature included the phrase "or otherwise" to provide a catchall category to ensure that those who routinely possess and use vehicles in a proprietary manner are insured.

We conclude that plaintiff was an owner of the tractor under MCL 500.3101(3)(*l*)(*i*) because he "ha[d] the use of" the tractor "under a lease or otherwise"[35] for more than 30 days.[36] As the sole member and agent of Tornado Trucking, plaintiff operated the tractor

---

[35] This "or otherwise" language in MCL 500.3101(3)(*l*)(*i*) "plainly indicates that the Legislature intended this subsection to apply in situations other than those involving leases or rentals." *Chop*, 244 Mich App at 682. The Legislature's use of catchall terms in a statute is intended to save it "from spelling out in advance every contingency in which a statute could apply." 2A Singer & Singer, Sutherland Statutory Construction (7th ed), § 47:17, p 386.

[36] Indeed, plaintiff's arrangement included just as much, if not more, proprietary and possessory authority over the vehicle than a traditional lease or rental scenario. Traditional

14

regularly and exclusively for at least six months prior to the accident. He was the only person to drive the tractor before the accident, and he was the sole decisionmaker as to its operation and upkeep. Plaintiff did not need anyone's permission to use the tractor; the only person capable of making any decisions regarding the tractor was plaintiff himself. And plaintiff kept the tractor in his custody, garaging it at a truck stop when he was not using it.

This Court in *Twichel* opined that "the focus must be on the nature of the person's right to use the vehicle."[37] These facts clearly demonstrate that plaintiff had the right to use the tractor in a manner that comported with ownership for a period of 30 days or more. Even plaintiff's use of the tractor for Tornado Trucking's business was not "under the direction or with the permission of another," given that the terms of the lease agreement entered into between Tornado Trucking and Land Trucking permitted plaintiff to make all crucial decisions with respect to the operation of the tractor and the facts have not indicated otherwise.[38] There is no genuine issue of material fact that plaintiff had a "regular pattern of unsupervised usage" to establish a sufficient proprietary or possessory use of the vehicle

---

leases and rentals often come with various—and sometimes onerous—use restrictions that are absent from the record in the present case.

[37] *Twichel*, 469 Mich at 530.

[38] *Ardt*, 233 Mich App at 691. The terms of this agreement distinguish this case from the example given by plaintiff of an employee of a corporation driving a corporate delivery truck. In the typical employer-furnished-vehicle case, the driver does not have a right to use, maintain, and make all crucial decisions about the vehicle without the direction or permission of another. A "regular pattern of *unsupervised* usage" is the distinguishing factor. *Id*. (emphasis added); see also *Kessel v Rahn*, 244 Mich App 353, 357-358; 624 NW2d 220 (2001). Accordingly, we do not suggest that all corporate employees are "owners" or "co-owners" of the vehicles they drive.

for more than 30 days, thus coming within the definition of "owner" under MCL 500.3101(3)(*l*)(*i*).[39] Accordingly, under the plain language of MCL 500.3101(3)(*l*)(*i*), plaintiff was an owner of the tractor and was required to maintain a no-fault policy under MCL 500.3101(1).[40]

In concluding to the contrary, the Court of Appeals majority erred by focusing on plaintiff's *actual* use of the tractor—his business use—instead of analyzing the scope of his *right to use* the tractor. The Court of Appeals emphasized that there was "no evidence that the tractor was being used for any purpose other than in furtherance of the business of Tornado Trucking."[41] But the statute contains no distinction between business and personal use. Rather, it plainly defines an "owner" as a "person . . . having the use of a

---

[39] *Ardt*, 233 Mich App at 691; see also *Kessel*, 244 Mich App at 357-358.

[40] We reject plaintiff's argument that MCL 500.3111, the out-of-state-accident provision, or MCL 500.3114, a priority provision, entitles him to PIP benefits from Auto Club as a relative domiciled in the same household as its named insured. Even plaintiff concedes that if he is deemed an "owner" of the vehicle, then he is precluded from recovering PIP benefits under MCL 500.3113(b) as the owner of a vehicle for which there was no PIP coverage at the time that the motor vehicle accident occurred. MCL 500.3111 and MCL 500.3114 do not nullify or override any of the no-fault act's other provisions that govern rights to no-fault benefits in specific circumstances, including MCL 500.3113(b). That is, the remainder of the no-fault act's eligibility requirements must also be satisfied in order to entitle a claimant to payment of benefits, and this includes MCL 500.3113(b). Thus, even if a policy "applies" under MCL 500.3114(1), or benefits are "payable" under MCL 500.3111, MCL 500.3113(b) clarifies that an owner of a vehicle that lacks the required insurance is ultimately "not entitled to be paid" PIP benefits. Accordingly, because plaintiff "was the owner . . . of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect," he "is not entitled to be paid personal protection insurance benefits for accidental bodily injury" under MCL 500.3113(b).

[41] *Abdulla*, ___ Mich App at ___; slip op at 5.

16

motor vehicle . . . ."[42]  Nothing in the statute qualifies an owner as one having "individual" or "personal" use of a vehicle, nor does it provide any other qualifying or limiting language on the phrase "having the use" thereof.  While plaintiff may not have made personal use of the tractor, as the sole member of Tornado Trucking, he had the right or autonomy to use the tractor as he pleased.  It is this right—not the actual use—that is the proper focus of our analysis.[43]

The Court of Appeals also erred by relying on the fact that the tractor was titled and registered in the name of plaintiff's limited-liability company.[44]  The Court of Appeals emphasized that Tornado Trucking is a separate legal entity distinct from plaintiff and that it possesses " 'all powers necessary or convenient to effect any purpose for which the company is formed . . . .' "[45]  Although plaintiff is the sole member of Tornado Trucking, the panel continued, " '[a] member has no interest in specific limited liability company property.' "[46]  Thus, the Court of Appeals held that plaintiff is merely an agent of Tornado Trucking[47] and that his use of the tractor was not of a proprietary or possessory nature, but

---

[42] MCL 500.3101(3)(*l*)(*i*).

[43] *Twichel*, 469 Mich at 532.

[44] A "corporation is its own 'person' under Michigan law, an entity distinct and separate from its owners, even when a single shareholder holds ownership of the entire corporation." *Hills and Dales Gen Hosp v Pantig*, 295 Mich App 14, 20; 812 NW2d 793 (2011).  "The rules respecting the corporate form apply equally to limited liability corporations." *Id*. at 21.

[45] *Abdulla*, ___ Mich App at ___; slip op at 5, quoting MCL 450.4210.

[46] *Id*., quoting MCL 450.4504(2).

[47] See MCL 450.4406.

"was incidental to the business of Tornado Trucking and the long-haul trucking companies served by Tornado Trucking."[48]  The Court of Appeals found "no grounds to pierce the corporate veil of the limited-liability company and declare [plaintiff] the owner of the tractor for these statutory purposes."[49]

While the Court of Appeals majority is correct that limited-liability companies are separate legal entities, the cited limited-liability statutes cannot overcome the specific language set forth in the broadly written definition of "owner" in the no-fault act.  That is, whether coverage is available under the no-fault act is controlled by the statutory definition of "owner" found in that act.  And that broad definition prioritizes function over form by employing the language "a person . . . having the use of a motor vehicle, under a lease or otherwise," without qualification.[50]  The Court of Appeals focused on Tornado Trucking's status as a limited-liability company without attempting to harmonize the language of the no-fault act, which contemplates that there may be more than one owner of a vehicle.

---

[48] *Abdulla*, ___ Mich App at ___; slip op at 5.

[49] *Id*. at ___; slip op at 5.

[50] The term "person" is not defined in the sections of the no-fault act pertinent to this case. Therefore, we must resort to the default definition of "person" as provided by MCL 8.3*l*: "The word 'person' may extend and be applied to bodies politic and corporate, *as well as to individuals*." (Emphasis added.)  That the Legislature included "person"—a term that unambiguously captures "individuals"—without alteration bolsters our conclusion that the operator of a sole-member limited-liability company can also be an "owner" under the no-fault act, regardless of who holds title to the vehicle.  In other words, plaintiff was "a[n] [individual] . . . having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days" at the time of the accident.  MCL 500.3101(3)(*l*)(*i*).

The Court of Appeals majority improperly treated plaintiff as two separate individuals—one who is the owner of Tornado Trucking and is responsible for making decisions about the proper insurance, and another who is the driver of the tractor and merely acts at Tornado Trucking's behest as its agent. Plaintiff solely controlled Tornado Trucking and had the sole authority to use the tractor as he pleased, without seeking permission from another. On these facts, functionally, he was an "owner" of the vehicle under the statute.[51] This is not a circumstance of piercing the veil of a corporate entity; rather, plaintiff is a separate and independent owner because of the manner in which he used the vehicle.

Our holding that plaintiff was an owner of the tractor is not only consistent with the text of the statute, it furthers "the sound public policy imperative that users of motor vehicles maintain appropriate insurance for themselves as indicated by their actual patterns of usage[.]"[52] Under the Court of Appeals' holding, a person could avoid being labeled an "owner" if that person uses a wholly owned limited-liability company to hold title to a motor vehicle but retains full use and control of the vehicle. Taken to its logical conclusion,

---

[51] There surely could be a different factual scenario in which a member of a limited-liability company is not an "owner" of a company vehicle because that driver does not have a right to use the vehicle without the direction or permission of another. See *Ardt*, 233 Mich App at 691. But again, it is the nature of a person's right to use the vehicle that controls, and here, it was solely plaintiff who used and exercised complete control over the tractor for more than 30 days before the accident. See *Twichel*, 469 Mich at 530.

[52] *Ardt*, 233 Mich App at 690. See also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 63 ("A textually permissible interpretation that furthers rather than obstructs the document's purpose should be favored.").

under the Court of Appeals' reading, a business owner could create a legal entity such as a limited-liability company, title a vehicle in the name of the legal entity, and use that vehicle for business purposes without having to obtain no-fault insurance on that vehicle as long as there is no-fault insurance on the business owner's (or even a resident relative's) personal vehicle. And the Court of Appeals' holding is not limited to commercial trucking but applies equally to every other kind of small business organized as a single-member limited-liability company. The loophole created by the Court of Appeals' analysis is inconsistent with the principle that the provisions of the no-fault act "operate to prevent users of motor vehicles from obtaining the benefits of personal protection insurance without carrying their own insurance . . . ."[53] The Court of Appeals' holding also inappropriately requires insurers to endure risks they did not assume—insuring unknown vehicles functionally owned by others.[54] Thus, our holding is consistent with both the policy underpinning the no-fault act and the language of said act.

## V. CONCLUSION

Under these facts, plaintiff's usage of the subject motor vehicle made him an owner of that vehicle under MCL 500.3101(3)(*l*)(*i*). Because he did not have the security required

---

[53] *Ardt*, 233 Mich App at 690. See also *Dye*, 504 Mich at 182 ("[G]iven that these statutory benefits would be available to all Michigan residents, the Legislature believed this could be most effectively achieved through a system of compulsory insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state.") (quotation marks, citation, and ellipsis omitted).

[54] See *Consol Mtg Corp v American Security Ins Co*, 69 Mich App 251, 256; 244 NW2d 434 (1976) ("[A]n insurer cannot be held liable on a risk which it did not elect or choose to assume. The theory is that the insurer has the right to assess the risks attendant upon the proposed insured and adjust its rate accordingly.") (citation omitted).

by MCL 500.3101(1) at the time of the accident, he is precluded from obtaining PIP benefits. We therefore reverse the judgment of the Court of Appeals and remand this case to the trial court for proceedings consistent with this opinion.

Brian K. Zahra
Megan K. Cavanagh
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood